1

2

3

4                              UNITED STATES DISTRICT COURT

5                                    DISTRICT OF NEVADA

6                                            * * *

7    BALUMA S.A. doing business as                    Case No. 2:20-CV-1642 JCM (DJA)
     ENJOYPUNTA DEL ESTE & CASINO,,
8                                                                  ORDER
                                    Plaintiff(s),
9

10          v.

11   BRIAN POFF II,,

                                    Defendant(s).
12

13

14          Presently before the court is plaintiff Baluma, S.A. d/b/a Enjoy Punta del Este & Casino's

15   ("Baluma" or "the casino") motion for summary judgment.  (ECF No. 14).  Defendant Brian

16   Poff, II ("Poff") filed a response (ECF No. 16), to which Baluma replied (ECF No. 17).

17   **I.      Background**

18          This matter arises from a gambling trip Poff took with his lifelong friend, Johnny Chow,

19   to Enjoy Punta del Este & Casino in June of 2019.  On or around June 19, 2019, Poff visited the

20   casino and completed a credit application requesting the issuance of credit for his use in the

21   casino.  (ECF No. 14-1).  During his stay, Poff signed a draw request for $100,000 and signed

22   five markers which obligated him to pay Baluma a total amount of $100,000—due between

23   September and October of 2019.  (ECF Nos. 14-4; 14-5).  Poff then left the casino without

24   repaying any of those funds.

25          After more than a year of litigation, discovery has closed and Baluma now seeks

26   summary judgment on its claims for breach of contract, breach of the implied covenant of good

27   faith and fair dealing, and unjust enrichment.  (ECF No. 14).

28   . . .

**James C. Mahan**
**U.S. District Judge**

1  **II.     Legal Standard**

2      Summary judgment is proper when the record shows that "there is no genuine dispute

3  as to any material fact and the movant is entitled to a judgment as a matter of law." [1]  Fed. R.

4  Civ. P. 56(a).   The purpose of summary judgment is "to isolate and dispose of factually

5  unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and

6  to avoid unnecessary trials on undisputed facts.   *Nw. Motorcycle Ass'n v. U.S. Dep't of

7  Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

8      When the moving party bears the burden of proof on a claim or defense, it must

9  produce evidence "which would entitle it to a directed verdict if the evidence went

10  uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

11  480 (9th Cir. 2000) (internal citations omitted).   In contrast, when the nonmoving party bears

12  the burden of proof on a claim or defense, the moving party must "either produce evidence

13  negating an essential element of the nonmoving party's claim or defense or show that the

14  nonmoving party does not have enough evidence of an essential element to carry its ultimate

15  burden of [proof] at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

16  (9th Cir. 2000).

17      If the moving party satisfies its initial burden, the burden then shifts to the party

18  opposing summary judgment to establish a genuine issue of material fact.  *See Matsushita

19  Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   An issue is "genuine" if

20  there is an adequate evidentiary basis on which a reasonable factfinder could find for the

21  nonmoving party and a fact is "material" if it could affect the outcome under the governing

22  law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

23      The opposing party does not have to conclusively establish an issue of material fact in

24  its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

25

26      [1] The court can consider information in an inadmissible form at summary judgment if
the information itself would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036
27  (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)
("To survive summary judgment, a party does not necessarily have to produce evidence in a
28  form that would be admissible at trial, as long as the party satisfies the requirements of
Federal Rules of Civil Procedure 56.")).

**James C. Mahan**
**U.S. District Judge**

1   1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary

2   record that show "there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  In other

3   words, the opposing party must show that a judge or jury has to resolve the parties' differing

4   versions of the truth.  *T.W. Elec. Serv.*, 809 F.2d at 630.

5   The court must view all facts and draw all inferences in the light most favorable to the

6   nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement*

7   *Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is

8   not to weigh the evidence but to determine whether a genuine dispute exists for trial.

9   *Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all

10  justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

11  nonmoving party is merely colorable or is not significantly probative, summary judgment

12  may be granted. *See id.* at 249–50.

13  **III.     Discussion**

14          a.   Breach of contract

15          To prevail on its breach of contract claim, Baluma must show "(1) formation of a valid

16  contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the

17  defendant; and (4) damages."  *See Laguerre v. Nevada Sys. of Higher Educ.*, 837 F. Supp. 2d

18  1176, 1180 (D. Nev. 2011).

19              *1.  A valid contract exists*

20          "An enforceable contract requires 'an offer and acceptance, meeting of the minds, and

21  consideration.' "  *Anderson v. Sanchez*, 373 P.3d 860, 863 (Nev. 2016) (citing *May v. Anderson*,

22  119 P.3d 1254, 1257 (Nev. 2005)).  Both credit applications and markers that permit patrons to

23  draw against their casino credit lines with a promise to repay that amount may constitute a valid

24  contract.  *Cf. Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536–37 (9th Cir. 2011) (discussing

25  a casino's obligations under a bilateral marker contract in Nevada); *see Morales v. Aria Resort &*

26  *Casino, LLC*, 995 F. Supp. 2d 1176, 1181 (D. Nev. 2014) ("Moreover, both the credit application

27  and the markers are contracts, under which Morales had a duty to pay.").  Further, "casino

28

**James C. Mahan**
**U.S. District Judge**                                          - 3 -

1  marker and a credit application agreement may be, but need not be, part of the same transaction."

2  *Las Vegas Sands*, 632 F.3d at 537.

3       The casino relies on a June 2019 credit application, draw request, and various markers—

4  all signed by Poff—to demonstrate a valid contract between itself and Poff.  (ECF No. 14 at 6).

5  Poff does not dispute that he signed all those documents but argues that no contract was formed

6  because he did not receive the money from the casino.  (ECF No. 16 at 13).  According to Poff,

7  Johnny Chow gave him the money in cash before he signed any documents with the casino.

8  (*Id.*).  However, Poff fails to demonstrate a genuine dispute of material fact over the validity of

9  the contracts because his argument is unsupported by the record.

10       Key to this analysis are Poff's Rule 36 admissions.  Federal Rule of Civil Procedure 36

11  permits a party to "serve on any other party a written request to admit . . . the truth of any matters

12  within the scope of Rule 26(b)(1) relating to: the facts, the application of law to fact, or opinions

13  about either."  FED. R. CIV. P. 36(a)(1)(A).  "A matter admitted under this rule is conclusively

14  established unless the court, on motion, permits the admission to be withdrawn or admitted,"

15  FED. R. CIV. P. 36(b), but a party must move to withdraw or amend his answers in order to

16  receive such relief.  *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citing *In re*

17  *Carney*, 258 F.3d 415, 419 (5th Cir. 2001)).  Because facts admitted under Rule 36 are

18  conclusively established, they "may be relied on as the basis for granting summary judgment."

19  *Id.* (citing *O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958)).

20       Through his Rule 36 responses, Poff admits that he filled out and signed the credit

21  application;[2] the draw request;[3] and five markers totaling $100,000.[4]  He also admits that the five

22  markers offered are the "true and correct copies of the [c]asino [m]arkers [that he] signed . . . ."[5]

23  He also admits to withdrawing approximately $70,000 and gambling with that money at the

24  casino.  (ECF Nos. 14 at 7–8; 16-2 ¶ 5).

25

26      [2] ECF No. 14-2 ¶¶ 1–3.

27      [3] *Id.* ¶¶ 6–7.

    [4] *Id.* ¶¶ 9–14.

28      [5] *Id.* ¶ 8.

**James C. Mahan**
**U.S. District Judge**

- 4 -

1           Despite those admissions, Poff now contends that he never would have asked for the

2 amounts listed on the casino floor and that he never saw or signed the markers, relying on a new

3 declaration submitted with his response.  (ECF No. 16-2).  But Poff has not moved to withdraw

4 his admissions, and merely submitting a declaration that contradicts his admissions is insufficient

5 to create a genuine issue of fact in this circuit.  *See Radobenko v. Automated Equip. Corp.*, 520

6 F.2d 540, 544 (9th Cir. 1975) (characterizing an affidavit that contradicted earlier deposition

7 testimony as "sham issues [that] should not subject the defendants to the burden of trial").  Poff's

8 Rule 36 admissions thus conclusively establish that the credit application, draw request, and

9 markers constitute a valid contract between him and the casino.

10                    *2.   Poff fails to show any genuine issues of material fact as to Baluma's performance*

11           Baluma points to the credit agreement, draw request, markers, and Poff's admission that

12 he withdrew at least $70,000 directly from casino tables during his June trip,[6] to support that it

13 fulfilled its obligations under the agreement.  (ECF No. 14 at 7–8).  Poff argues that Baluma did

14 not perform because Chow gave him the money before he signed the credit instruments.  (ECF

15 No. 16 at 13).  Yet again, nothing on the record that supports his argument.

16           To successfully rebut a motion for summary judgment, the non-moving party must point

17 to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

18 *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  However, the mere existence of a

19 scintilla of evidence in support of the party's position is insufficient to establish a genuine

20 dispute; there must be evidence on which a jury could reasonably find for the party.  *Anderson v.*

21 *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

22           Here, Poff's argument relies entirely on his allegation that Johnny Chow—who is neither

23 a named party nor a deposed witness—gave him the money before he signed any documents

24 with Baluma.  (*See* ECF Nos. 16 at 13, 16–17; 16-1 at 13–14, 26).  Yet now that discovery has

25 closed, Poff has not provided even a scintilla of evidence to support that he received money from

26 Johnny Chow before signing the agreements.

27

28

---

[6] (ECF No. 16-1 at 16).

**James C. Mahan**
**U.S. District Judge**

1   While Poff claims there was an agreement between him and Chow regarding the money,

2   he has not produced a written contract, explained the terms and circumstances of the alleged oral

3   contract, or deposed Chow to discuss the alleged agreement or otherwise support his story.

4   Instead, Poff simply alleges that Chow gave him a backpack full of money that he later deposited

5   with the casino's cage and believed to be drawing from when he gambled.  (*See* ECF No. 16-1 at

6   14–15).

7   Poff's arguments regarding his liability are disingenuous and contradicted by his own

8   briefing.  He claims that "gambled in the casino using purchased chips with the understanding

9   that he was not using the chips to place his own bets; rather, he was betting at Johnny Chow's

10   direction" (ECF No. 16 at 16), yet he admits that he signed paperwork whenever he withdrew

11   chips from those tables.  (ECF No. 16-1 at 16).  That paperwork—the markers—clearly reflects

12   Poff's obligation to repay the casino for the amounts he withdrew in chips.  Despite Poff's

13   feigning total ignorance,[7] he fails to show a genuine issue of material fact exists as to whether

14   Baluma performed its contractual obligations to provide him with the credit for gambling.

15   Accordingly, Baluma meets its burden to show performance.

16   *3. Poff breached his obligations under the contract by failing to repay the markers*

17   A party breaches a contract when he materially fails "to perform 'a duty arising under or

18   imposed by [an] agreement.'"  *State Dep't of Transp. v. Eighth Jud. Dist. Ct. in and for Cnty. of

19   Clark*, 402 P.3d 677, 682 (Nev. 2017) (citation omitted).  The record unequivocally establishes

20   that Poff has not repaid Baluma any money.  (ECF No. 14-2 ¶ 17 ("I admit I have not paid the

21   [c]asino any amounts, but deny the [c]asino loaned me any amounts.")).

22   Accordingly, Baluma shows that Poff breached his obligations under the agreement.

23   . . .

24   . . .

25   . . .

26

27

28   [7] *See* ECF No. 16-1 at 13 ("I'm not that really savvy with the casino"), 25 ("Q: is there any reason you didn't [read these documents] before signing them or ask for a translation? . . . A: I guess just being naive.  I don't know, no real good answer.").

**James C. Mahan**
**U.S. District Judge**

1    *4.   Baluma suffered damages from Poff's breach*

2        "[C]ontract damages are prospective in nature and are intended to place the nonbreaching

3    party in as good a position as if the contract had been performed*." Colorado Env'ts, Inc. v.*

4    *Valley Grading Corp.*, 779 P.2d 80, 84 (Nev. 1989).

5        Poff admits that he withdrew "approximately $70,000" from the cage on his June trip.

6    (ECF No. 16-2 ¶ 5).  That amount is explained by two of the markers which totaled $72,100,

7    (ECF No. 14-5 at 3), with the remaining $27,900 accounted for by the other three markers that

8    Poff admits he signed.  (*Id.* at 2; ECF No. 14-1 ¶¶ 8–14).  While Poff does not explicitly admit

9    that he withdrew the entire $100,000, he has not pointed to anything on the record from which

10   the court could draw a reasonable inference that he withdrew less than the full amount of the

11   markers he signed for.

12       Poff does argue that Baluma produced spreadsheets showing that he did not withdraw

13   any credit from his limit.  (ECF No. 16 at 13–14; (citing ECF Nos. 16-5; 16-6; 16-7)).  He argues

14   that the spreadsheets show he had "credit without loss" of $100,000, and thus do not show that

15   he lost any money gambling.  However, these facts are irrelevant to the claims at issue.

16       Whether Poff was a successful gambler with the casino's money has no effect on how

17   much he borrowed.  To establish a genuine issue of fact on this issue, Poff would have to show

18   that he did not sign markers that totaled $100,000.  But his admissions show that he did sign

19   them, and his deposition shows that he did so whenever he withdrew money directly from the

20   tables he gambled at.  (ECF Nos. 14-2 ¶¶ 8–14; 16-1 at 16).  Thus, based on the record, Poff fails

21   to show there are any genuine issues of material fact upon which he survives summary judgment.

22   Therefore, Baluma has shown that it suffered damages, and the court grants its motion.

23       Yet, the court cannot determine the amount of those damages until Poff's counterclaims

24   are settled.  (*See* ECF No. 19).  Poff's counterclaims for breach of contract, setoff, and

25   recoupment directly implicate the amount of Baluma's damages, but Poff did not assert them

26   until after briefing on this motion concluded.  So, he has not had an opportunity to be heard on

27   the merits of his claims.

28

**James C. Mahan**
**U.S. District Judge**                                                                - 7 -

1   Accordingly, the court GRANTS summary judgment in favor of Baluma for its breach of

2   contract claim on the issue of liability without yet holding the specific amount of damages due.

3       B.  <u>Baluma cannot prevail on its remaining claims</u>

4   Baluma also lodges a claim for contractual breach of the implied covenant of good faith

5   and fair dealing, and alternatively, a claim for unjust enrichment. While Baluma cannot recover

6   for both unjust enrichment and breach of contract, it argues that it is still entitled to recovery

7   under a good faith and fair dealing claim if it is successful on its claim for breach of contract.

8   Baluma is mistaken.

9   Under Nevada law, a claim for contractual breach of the implied covenant of good faith

10  and fair dealing requires proof that the defendant breached its duty of good faith and fair dealing

11  by acting in a manner unfaithful to the purpose of the contract.  *See Perry v. Jordan*, 900 P.2d

12  335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923

13  (Nev. 1991)).  Thus, a contractual breach of the implied covenant requires the plaintiff to show

14  that the breaching party complied with the express terms of the contract but deliberately and

15  intentionally contravened the intention and spirit of the contract.  *Hilton Hotels Corp.*, 808 P.2d

16  at 923.  Here, the casino has shown that Poff did not comply with the contract's terms by failing

17  to repay the amount he owed.  Thus, it cannot recover under for a contractual breach of good

18  faith and fair dealing.

19  Accordingly, the court dismisses Baluma's remaining claims.

20  **IV.**    **Conclusion**

21  Accordingly,

22  IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Baluma's motion for

23  summary judgment (ECF No. 14) be, and the same hereby is, GRANTED as to its breach of

24  contract claim.  Baluma's remaining claims are dismissed.

25  The court cannot enter judgment until Poff's counterclaims have been adjudicated.

26  DATED March 9, 2022.

27  _____

28      UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**